IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JOHN F. CURRAN, III,

    Plaintiff,

v.                                                                          No. 1:23-cv-01064-STA-jay

CARL A. FRONABARGER,
STATE OF TENNESSEE,
J. BRENT BRADBURY, and
PATRICK S. BUTLER,

    Defendants.

## REPORT AND RECOMMENDATION

Before the Court are three Motions to Dismiss filed by Defendants Bradberry[1], Butler, and the State of Tennessee. ECF Nos. 13, 27, 29. Plaintiff has responded in opposition. ECF Nos. 15, 32. This matter was referred to the undersigned for management of all pre-trial matters. Admin. Order 2013-05. The undersigned RECOMMENDS severing the claims raised against Defendant Fronabarger from the State Defendants. Once severed, the undersigned further RECOMMENDS applying the *Younger* abstention doctrine to this case. Based on *Younger*, the undersigned RECOMMENDS the following: dismissal of Plaintiff's claims against Defendants Bradberry and Butler, dismissal of Plaintiff's request for injunctive relief against the State of Tennessee, and a stay of Plaintiff's claims seeking monetary damages from the State of Tennessee.

### I. FACTUAL BACKGROUND

Plaintiff filed this pro se Complaint on April 12, 2023. ECF No. 1. On the same day, he

---

[1] The Court takes judicial notice that it appears Plaintiff intended to name Tennessee Circuit Court Judge, J. Brent Brad*berry*, and not J. Brent Brad*bury*. The State has "assume[d] for purposes of [the motion to dismiss] that Plaintiff intended to name said J. Brent Bradberry." ECF No. 29 at n. 1.

1

filed to proceed as a seaman pursuant to 28 U.S.C. § 1916, which would allow his case to continue without paying the filing fee. ECF No. 2. The Court granted Plaintiff's Motion. ECF No. 23. Plaintiff filed a Motion to Amend his Complaint, which the Court granted and adopted the filing as the Amended Complaint. ECF Nos. 11, 25. The Amended Complaint added two Defendants: Defendant Bradberry and Defendant Butler. ECF No. 11-1.

The Amended Complaint raises two claims: a claim for salvage compensation against Defendant Fronabarger and what amounts to a § 1983 claim for constitutional rights violations against the State of Tennessee, Defendant Bradberry, and Defendant Butler.[2] ECF No. 26 at 2, 6. Plaintiff notes that he believes this Court has "exclusive original jurisdiction in civil cases in admiralty and maritime matters." ECF No. 26 at 1. Because "[t]he subject matter of the case is plainly admiralty and maritime law," the state has no jurisdiction. ECF No. 26 at 1.

The allegations in Plaintiff's Amended Complaint establish the following. Plaintiff "contemplated purchasing a marina complex" named the Saltillo Marina from Defendant Fronabarger. ECF No. 26 at 3, ¶ 1. During the "due diligence period," Plaintiff discovered that the "office and fueling point for the Saltillo Marina" was abandoned by Defendant Fronabarger, "had broken from its moorings and anchorages," and floated "some 20 or so . . . miles down river from the anchorages and moorings of Saltillo Marina proper." ECF No. 26 at 3, ¶¶ 3-5.

Plaintiff avers that he "successfully salvaged the fuel tanks located on the abandoned motor vessel in accordance with the Federal Marine Debris Act and the 2012 US Coast Guard & Maritime Prevention Act in May of 2021." ECF No. 26 at 3, ¶ 7. In pursuit of this operation, Plaintiff hired a third party, Mr. Scott, to assist with the operation. ECF No. 26 at 4, ¶ 8. After securing the errant floating office, Plaintiff "sought salvage compensation from the purported lien holder of the assets

---

[2] The Court will refer to these three Defendants collectively as "the State Defendants."

2

of the Saltillo Marina." ECF No. 26 at 4, ¶ 10. He also "presented an invoice to the agent of . . . Defendant Fronabarger," but the "agent . . . refused to pay for the salvage services provided by the Plaintiff." ECF No. 26 at 4, ¶¶ 11-12. This led Plaintiff to file "a lien against the anchorage and moorings of the Saltillo Marina . . . ." ECF No. 26 at 4, ¶ 13.

After the alleged salvage operation, and attempts to collect fees for services not contracted for by Defendant Fronabarger, the State of Tennessee pursued criminal charges against Plaintiff. ECF No. 26 at 8, ¶¶ 15-16. A Henry County grand jury indicted Plaintiff on two counts, but that criminal proceeding has apparently been dismissed. ECF No. 26 at 8, ¶¶ 15-18.[3] However, Hardin County didn't let Plaintiff off the hook so easily. That county grand jury also returned a two-count criminal indictment against Plaintiff; the criminal proceedings appear to be ongoing. ECF No. 26 at 8, ¶¶ 22-24. Plaintiff notes that one of the counts is for "filing the lien on the anchorages and moorings" and the other count is "for [withholding] pay from Mr. Scott." ECF No. 26 at 8 ¶ 24.[4] It appears to the Court as though Defendants Bradberry and Butler serve as the judge and prosecutor in Plaintiff's state case.

On several occasions throughout the Amended Complaint, Plaintiff points out that the salvage operation took place within federal waters. ECF No. 26 at 1, 4.[5] He also notes that he

---

[3] Of note, Plaintiff previously raised "an administrative claim for damages against the State of Tennessee for the actions of the 24th Judicial District, similar in fashion to the Federal Tort Claims Act process." ECF No. 26 at 8, ¶ 19. This suit was filed "in late 2022." ECF No. 26 at 8, ¶ 19. It has since been dismissed, which Plaintiff claims "makes way for this federal claim." ECF No. 26 at 8, ¶ 21.

[4] According to Plaintiff, withholding Mr. Scott's payment was justified because he "represented a clear threat to the safety and security of the salvage operation and the Plaintiff has the right under federal law to punish a crew member of a salvage team for violations of law at the federal or state level." ECF No. 26 at 9, ¶ 29. This apparent danger was due to Mr. Scott's alleged participation, along with "a group of Hardin County employees" in the "ongoing sexual assault" of a "young lady." ECF No. 26 at 9, ¶¶ 26-27.

[5] "[T]he Kentucky Lake region of the Tennessee River and where the salvage occurred by the Plaintiff, is an inland waterway of the United States which sees significant foreign vessel traffic and is subject to the admiralty and maritime laws and located within the District." ECF No. 26 at 2. "Mr. Scott performed these services all within the federal flowage easement and on the site of the anchorage and moorings of the Saltillo Marina." ECF No. 26 at 4, ¶ 8.

3

"identified to the Circuit Court of Hardin County that the Federal District Courts have exclusive jurisdiction over Admiralty and Maritime matters," but that the "Circuit Court may not be aware of the jurisdiction of the federal district courts as it relates to Maritime and Admiralty law." ECF No. 26 at 9-10, ¶¶ 33-34.

Plaintiff's first claim for salvage compensation states that he "seeks reasonable compensation for the voluntary salvor services to Defendant Fronabarger on an abandoned powered vessel that posed a risk to release petroleum products into the Tennessee River." ECF No. 26 at 2. As to his second claim, Plaintiff states that his "rights under the 4th Amendment to the US Constitution [sic] have been violated" due to the "ongoing illegal prosecution of the Plaintiff for acts which are protected under Admiralty and Maritime law exclusively adjudicated by the federal courts, not the State Courts." ECF No. 26 at 6. Plaintiff, therefore, seeks $1,546,000 "for salvage compensation" against Defendant Fronabarger. ECF No. 26 at 10. Plaintiff then requests "Judgement [sic] against the State of Tennessee, Defendant[,] in the form of dismissal of the criminal complaint and monetary damages for the actions of the employees of the State of Tennessee in excess of $75,000." ECF No. 26 at 10. Plaintiff does not request relief from Defendants Bradberry or Butler.

## II. THE COURT SHOULD SUA SPONTE SEVER

It is apparent to the undersigned that the best approach in navigating this case moving forward is to sever those claims raised against Defendant Fronabarger from those claims raised against the State Defendants.

### A. PROPOSED LEGAL STANDARDS

Federal Rule of Civil Procedure 21 states that "on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." FED. R. CIV.

4

P. 21. The factors to consider in deciding whether to sever are:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for separate claims.

*Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018) (quoting *Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901, 940 (M.D. Tenn. Aug. 28, 2013).

### B. ANALYSIS

At first blush it may appear as though the first two factors would weigh in favor of not severing the claims against Defendant Fronabarger. However, the Court notes that while the facts of the state court prosecution and the salvage claims against Defendant Fronabarger may be related in terms of transaction or fact, the questions of law are quite different. Whether Plaintiff can recover in federal court in a civil action for an alleged salvage operation might as well be an ocean apart from the issue of whether Plaintiff violated state law by filing a fraudulent lien.

Moreover, the third factor regarding judicial economy outweighs any similarities that may exist regarding the factual background. This case has already raised a plethora of procedural missteps and issues.[6] The judicial resources that have been expended to ensure this case proceeds in accordance with the Federal Rules of Civil Procedure indicate that severing the claims and parties will ensure judicial efficiency. The following substantive analysis of the State Defendants' Motions to Dismiss will show that some Defendants should be dismissed outright, claims against another should be stayed, and the claims against Defendant Fronabarger may proceed. As such, in

---

[6] Plaintiff has already appealed an Order to the Sixth Circuit that denied a procedurally deficient Motion for Default Judgment, an inadequate Motion for Injunctive Relief, and a moot Motion for Evidentiary Hearing. ECF Nos. 39, 46, 53. Plaintiff has also filed an untimely Motion to Compel Discovery, as well as another procedurally deficient Motion for Default Judgment. ECF Nos. 37, 41. Now, in what the Court can only describe at this point as scuttlebutt, an issue of whether Defendants Bradberry and Butler were properly served, when they were served, and in which capacities has risen from the depths of Davy Jones's civil procedure locker.

terms of docket management, the undersigned submits severing the claims against Defendant Fronabarger would best serve judicial economy.

As to the fourth factor, the Court finds there are no issues of prejudice should the claims be severed. Finally, while there is overlap as to some of the proof that may be required, it is not so substantial that severing the claims is ill-advised. Therefore, the undersigned RECOMMENDS SUA SPONTE SEVERING the salvage compensation claim against Defendant Fronabarger from the constitutional claims against the State Defendants.

### III. DEFENDANTS' MOTIONS TO DISMISS

Based on the analysis that follows, the Court RECOMMENDS abstaining from exercising jurisdiction in this case pursuant to the *Younger* abstention doctrine. Because *Younger* abstention applies as to the State Defendants, the undersigned RECOMMENDS GRANTING the Motion to Dismiss filed by Defendants Bradberry and Butler, GRANTING in part the Motions to Dismiss filed by the State of Tennessee, and STAYING the remainder of the case against the State of Tennessee.

#### A. THE PARTIES' POSITIONS

The State of Tennessee argues the Court should dismiss Plaintiff's claims against it for two reasons: 1) "[t]he Eleventh Amendment bars any claim for money damages against the State," and 2) "*Younger* abstention prevents this Court from interfering with the State's criminal prosecution of Mr. Curran." ECF No. 13 at ¶¶ 1-2; ECF No. 27 at ¶¶ 1-2.

Regarding the State's Eleventh Amendment immunity, Plaintiff responds that the "Tennessee Government Tort Liability Act . . . generates a certain set of torts which a Plaintiff may seek civil damages and certain orders against state employees." ECF No. 15 at 5; ECF No. 32 at 7. He also argues that the two elements of a § 1983 claim are met. ECF No. 15 at 5; ECF No.

6

32 at 7-8. As to the *Younger* doctrine, Plaintiff responds that there is an exception that applies in this instance, namely that the state law being enforced in the criminal proceedings is "flagrantly and patently unconstitutional." ECF No. 13 at 2; ECF No. 32 at 5. He argues that the State's continued prosecution of him is in violation of the exclusive jurisdiction of the federal courts over maritime and admiralty matters. ECF No. 32 at 1-2, 4.

Defendants Bradberry and Butler argue, in their official capacities, that the Court should dismiss the claims raised against them for three reasons.[7] First, a suit against them in their official capacities is equivalent to a suit against the State of Tennessee; as such the Eleventh Amendment "bars any claim for money damages against the State." ECF No. 29 at 1. They note that the State has neither consented to suit in federal court, nor has Congress abrogated the State's sovereign immunity in this case. ECF No. 29 at 1. Second, as state officials acting in their official capacities, Defendants Bradberry and Butler are not "persons" under § 1983, and as such cannot be held liable for any constitutional rights violations. ECF No. 29 at 2. Third, Defendants Bradberry and Butler rely on *Younger* to argue that the ongoing criminal prosecution of Plaintiff in state court prevents this Court from proceeding with Plaintiff's claims. ECF No. 29 at 2.

Plaintiff responds to Defendants Bradberry and Butler by first arguing that because they do "not have any professional duties in any location that is not state property," and they had "no authority to discharge their duties" in what Plaintiff argues is exclusively federal jurisdiction, these two Defendants were not operating in their official capacities. ECF No. 32 at 2. Plaintiff also argues he has met the two elements for § 1983 to allow his claims against Defendants Bradberry

---

[7] Defendants Bradberry and Butler note in their Motion to Dismiss filed on August 30, 2023, that "[t]here is no indication that Plaintiff has sued Defendants Bradberry or Butler in their individual capacities." ECF No. 29. The course of proceedings since this Motion was filed indicates that Plaintiff did intend to sue Defendants Bradberry and Butler in their individual capacities. ECF Nos. 47, 49. This issue, ultimately, will prove to be moot as *Younger* counsels dismissal of the claims against these two Defendants.

and Butler to proceed. ECF No. 32 at 7-8. Finally, he again raises an exception to the *Younger* doctrine to argue the ongoing state criminal proceeding is "flagrantly and patently unconstitutional . . . ." ECF No. 32 at 5.

### B. PROPOSED LEGAL STANDARDS

The undersigned will address *Younger* abstention and exclusive federal jurisdiction over maritime and admiralty cases; the following analysis supports the undersigned's RECOMMENDATION to GRANT the Motions to Dismiss found at docket entries 13, 27, and 29.[8]

#### 1. *Younger* Abstention Doctrine

Federal courts should abstain from interfering with "a pending state court proceeding when the state's interest is so important that exercising federal jurisdiction would disrupt the comity between federal and state courts." *Cooper v. Parrish*, 203 F.3d 937, 954 (6th Cir. 2000) (internal quotations omitted); *see also Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003). *Younger* abstention "applies when the state proceeding 1) is currently pending, 2) involves an important state interest, and 3) affords the plaintiff an adequate opportunity to raise constitutional claims." *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006).

*Younger* abstention is "not a question of jurisdiction, but is rather based on 'strong policies counseling against the exercise of such jurisdiction.'" *O'Neill v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2008). The doctrine is best read to ask not whether a federal court *can* wade into a case, but whether the federal court *should*. The Supreme Court has been very clear: "*Younger* exemplifies one class of cases in which federal-court abstention is *required*: Where there is a parallel, pending

---

[8] Although Defendants raise immunity to justify dismissal, the Court declines to analyze that argument at this juncture. Because the undersigned finds that *Younger* abstention applies, evaluating immunity would be inappropriate as the ultimate conclusion of *Younger* is to decline to exercise jurisdiction over the case.

8

state criminal proceeding, federal courts *must* refrain from enjoining the state prosecution." *Sprint Commc'n. Inc., v. Jacobs*, 571 U.S. 69, 72 (2013) (emphasis added). The Sixth Circuit has counseled that "when state proceedings are pending, principles of federalism dictate that the constitutional claims should be raised and decided in state court without interference by the federal courts." *Doscher v. Menifee Circuit Court*, 75 Fed. Appx. 996, 997 (6th Cir. 2003). This is in part due to the presumption that "the state courts are able to protect the interests of the federal plaintiff." *Meyers v. Franklin County Court of Common Pleas*, 23 Fed. Appx. 201, 205 (6th Cir. 2001) (internal quotations omitted).

The Sixth Circuit has held that a plaintiff must do more than show a state court "ignored" their federal or constitutional issues in the state proceeding. *Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 701 (6th Cir. 2013). So long as a plaintiff is able to present his or her constitutional claims, there cannot be a "showing that state procedural law" failed to provide the plaintiff with an adequate opportunity. *Nimer*, 707 F.3d at 701 ("But the [plaintiffs] have not carried their burden in showing that state procedural law barred them from presenting their constitutional claims—which they did present.").

In exercising its discretion to abstain from hearing a case, a federal court may dismiss the case, or it may stay the case. *Coles v. Granville*, 448 F.3d 853, 866 (6th Cir. 2006). Whether a court stays or dismisses a case pursuant to *Younger* abstention largely depends on the relief sought. *James v. Hampton*, 513 Fed. Appx. 471, 476 (6th Cir. 2013). Where a plaintiff seeks injunctive (or equitable) relief, "the district court may exercise its discretion . . . to dismiss the case" pursuant to abstention principles. *Nimer*, 707 F.3d at 702. However, where a "plaintiff[] seek[s] purely legal relief, in the form of damages," Supreme Court precedent "prevents the district court from . . . deciding to dismiss the case." *Id*. "Issuing a stay avoids the costs of refiling [a plaintiff's] case

9

before the statute of limitations expires." *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995).

There are three exceptions to the application of *Younger* abstention. First, if "the state proceeding is motivated by a desire to harass or is conducted in bad faith," then the federal court should allow the claim to proceed. *Aaron v. O'Connor*, 914 F.3d 1010, 1019 (6th Cir. 2019) (internal quotations omitted). Second, the federal claims may proceed if "the challenged statute is flagrantly and patently violative of express constitutional prohibitions." *Id*. (internal quotations omitted). Finally, if "there is an extraordinarily pressing need for immediate federal equitable relief," then the federal court claims may proceed." *Id*. (internal quotations omitted).

### 2. Exclusive Federal Maritime and Admiralty Jurisdiction

"Article III of the Constitution grants the federal courts jurisdiction over maritime cases. Under 28 U.S.C. § 1333, the federal courts have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction . . . ." *Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986, 992 (2019) (internal quotations omitted). But just because a case "relates to boats" does not mean that case falls within the exclusive maritime jurisdiction of the federal courts. *Kiesgen v. St. Clair Marine Salvage, Inc*., 724 F. Supp. 2d 721, 726 (E.D. Mich. July 12, 2010).

To invoke federal admiralty jurisdiction, a party must "satisfy conditions both of location and of connection with maritime activity." *In re Wepfer Marine, Inc*., 344 F. Supp. 2d 1120, 1124 (W.D. Tenn. Nov. 9, 2004) (quoting *Jerome B. Grubhart, Inc*., 513 U.S. 527, 534 (1995)). Thus, there is a location test and a connection test. *In re Wepfer Marine, Inc*., 344 F. Supp. 2d at 1124. The connection test requires that the activities at issue be "so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Id*. This requires a showing that "the incident has a potentially disruptive impact on

maritime commerce." *Ayers v. United States*, 277 F.3d 821, 826 (6th Cir. 2002) (quoting *Grubhart*, 513 at 534).

Despite this apparent exclusive jurisdiction, there are situations where state courts retain concurrent jurisdiction over conduct that occurs on waterways, boats, and would otherwise satisfy the location and connection tests. State courts and federal courts have concurrent jurisdiction to prosecute criminal conduct related to water-based incidents. *Hoopengarner v. United States*, 270 F.2d 465, 471 (6th Cir. 1959). The "saving to suitors clause" found in 28 U.S.C. § 1333(1) also "preserves remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 445 (2001). Additionally, state courts have in personam jurisdiction over parties to an otherwise maritime suit so long as they do "not attempt to make changes in the substantive maritime law." *American Dredging Co. v. Miller*, 510 U.S. 443, 447 (1994) (internal quotations omitted).

**C. ANALYSIS**

**1. *Younger* Abstention Doctrine Applies to the State Defendants**

The undersigned begins by recommending that the Court abstain from exercising jurisdiction in the case against the State Defendants. Upon review of the factual history, with the benefit of the State Defendants' Responses, this case is the precise type of scenario in which comity, federalism, and the state's interests counsel abstention.

This case meets the three elements as to when exercising *Younger* abstention is appropriate. First, there is an ongoing state criminal proceeding in Hardin County, which has given rise to Plaintiff's claims against the State Defendants. Second, the enforcement of Tennessee's criminal laws is undoubtedly an important state interest. Finally, the state court provides the Plaintiff with adequate recourse regarding his constitutional claims.

As to this third and final element, Plaintiff argues that the state court was unaware of exclusive federal maritime jurisdiction. However, "the burden of establishing the inadequacy of the state courts rests on the plaintiff." *Meyers*, 23 Fed. Appx. at 205. Upon review of the record, the Court finds no support for Plaintiff's assertion. Although federal maritime jurisdiction may not be a frequent issue raised before the Hardin County Court, Plaintiff's argument is equivocal at best. He states that the "Circuit Court *may* not be aware of the jurisdiction of the federal district courts as it relates to Maritime and Admiralty law." ECF No. 26 at 9-10, ¶¶ 33-34 (emphasis added). Such a statement fails to reach Plaintiff's burden in establishing the inadequacy of the state court forum. Moreover, the Plaintiff has indeed brought this issue before the state tribunal. If he disagrees with the trial court's decision regarding jurisdiction, the proper recourse would have been to appeal that decision through the state process, not wade over to federal court. Abstention doctrines, generally, and the *Younger* abstention doctrine, specifically, were designed for scenarios such as this. As such, the Court should abstain from exercising jurisdiction.

**2. There is No Exception to *Younger* Applicable in this Case**

Plaintiff argues that there is an exception to *Younger* in this case. He argues that because federal courts have exclusive jurisdiction over issues of maritime and admiralty law, the state criminal proceedings meet the "flagrantly and patently" unconstitutional exception. *Aaron*, 914 F.3d at 1019. Plaintiff argues, on multiple occasions, that the state court has no jurisdiction in its criminal case because Plaintiff is subject to exclusive federal jurisdiction as his case qualifies as an admiralty or maritime case. ECF No. 15 at 1-2; ECF No. 32 at 2. Plaintiff also attempts to anchor his exclusive federal jurisdiction argument to the location in which the underlying actions took place: federal waterways. The Court must take this opportunity to disabuse Plaintiff of such a notion.

It is true that "Article III of the Constitution grants the federal courts jurisdiction over maritime cases. Under 28 U.S.C. § 1333, the federal courts have 'original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction . . . .'" *Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986, 992 (2019). But just because a case has a nexus to waterways does not mean that case falls within the exclusive maritime jurisdiction of the federal courts. *Kiesgen v. St. Clair Marine Salvage, Inc.*, 724 F. Supp. 2d 721, 726 (E.D. Mich. July 12, 2010).

It is apparent to the Court that there is no conflict between the state court's jurisdiction to criminally prosecute Plaintiff and this Court's exclusive jurisdiction over civil maritime and admiralty issues. Plaintiff insists that because the property he did not own, was not contracted to salvage, and ultimately required the employ of a third party to recover, was located within federal waters, the state court has no jurisdiction over him. That is an incorrect statement of what is required to establish exclusive federal maritime jurisdiction. "[A] party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must satisfy conditions both of location and of connection with maritime activity." *In re Wepfer Marine, Inc.*, 344 F. Supp. 2d 1120, 1124 (W.D. Tenn. Nov. 9, 2004) (quoting *Jerome B. Grubhart, Inc.*, 513 U.S. 527, 534 (1995)). Thus, there is a location test and a connection test. *In re Wepfer Marine, Inc.*, 344 F. Supp. 2d at 1124.

Assuming, but not deciding, that Plaintiff's conduct in salvaging the fuel tanks aboard the Saltillo Marina's wayward office-boat satisfies the location test, Plaintiff's argument fails as to the connection test. The connection test requires that the activities at issue be "so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Id*. This requires a showing that "the incident has a potentially disruptive impact on maritime commerce." *Ayers v. United States*, 277 F.3d 821, 826 (6th Cir.

13

2002) (quoting *Grubhart*, 513 at 534).

The undersigned finds that the conduct at issue in the state's criminal prosecution of Plaintiff is too attenuated from the traditional admiralty realm to establish exclusive federal jurisdiction. The State's criminal prosecution is not related to the actual salvage operation that Plaintiff allegedly embarked upon; it relates to conduct *after* the salvage took place. Plaintiff made no showing that the alleged fraudulent lien and non-payment to a third party falls within that scope of "activity traditionally subject to admiralty law . . . ." *Id*.

Moreover, there are several situations in which the states retain concurrent jurisdiction over conduct that occurs on waterways and boats. State courts and federal courts have concurrent jurisdiction to prosecute criminal conduct related to water-based incidents. *Hoopengarner v. United States*, 270 F.2d 465, 471 (6th Cir. 1959). The "saving to suitors clause" found in 28 U.S.C. § 1333(1) also "preserves remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 445 (2001). Additionally, state courts have in personam jurisdiction over parties to an otherwise maritime suit so long as they do "not attempt to make changes in the substantive maritime law." *American Dredging Co. v. Miller*, 510 U.S. 443, 447 (1994) (internal quotations omitted). Plaintiff's reliance on the location of a wayward floating office to establish exclusive federal jurisdiction over his later criminal conduct is not the life preserver he thinks it is.

### 3. The Court Should Grant the Motions to Dismiss in Part

In applying *Younger* abstention, the remaining question is whether the Court should stay the case or grant the Motions to Dismiss filed by the State Defendants. First, as to Defendants Bradberry and Butler, the Court notes that Plaintiff requested *no* form of relief from these two Defendants. Because *Younger* applies to these Defendants, and Plaintiff has not requested money

14

damages from them, the Court RECOMMENDS GRANTING their Motion to Dismiss. *Nimer*, 707 F.3d at 702.

Second, the Court notes that Plaintiff requested two forms of relief from the State of Tennessee: "dismissal of the criminal complaint and monetary damages . . . ." ECF No. 26 at 10. Because there are two types of relief requested, the Court RECOMMENDS GRANTING the Motion to Dismiss as to the injunctive relief, but STAYING the case in order to preserve any of Plaintiff's claims that may yield monetary damages.[9] *Id*.

### IV. THE REMAINING MOTIONS ARE MOOT

Since the initial Motions to Dismiss have been filed, Plaintiff has filed a bevy of additional Motions seeking various actions from the Court. These Motions are: (1) Motion to Compel Discovery from Defendants Bradberry and Butler; (2) Motion for Injunctive Relief (substantively a Motion for Default Judgment); (3) Motion for Extension of Time to File Reply to Defendants Bradberry and Butler's Response in Opposition; (4) Motion for Entry of Default against Defendant Bradberry. ECF Nos. 37, 41, 45, 47. Defendants have filed Responses in opposition. ECF Nos. 38, 44, 48.

Defendant Bradberry has also filed a second Motion to Dismiss, this time in his individual capacity. ECF No. 51. As of the date of this Report and Recommendation, Plaintiff has not filed a Response to that Motion.

Each of Plaintiff's Motions request Court action against Defendant Bradberry and/or Defendant Butler. Because the Court RECOMMENDS DISMISSING the claims against them pursuant to *Younger*, the Court further RECOMMENDS DENYING these Motions as MOOT. As

---

[9] The Court notes that there is an issue of immunity that will likely prevent Plaintiff recovering any monetary damages from the State of Tennessee in the future. However, such a substantive analysis of the applicable immunity doctrines will have to wait until the Court elects to exercise jurisdiction over Plaintiff's claims.

15

to the second Motion to Dismiss filed by Defendant Bradberry, the Court also RECOMMENDS DENYING that as MOOT.

## V. CONCLUSION

The undersigned concludes this voyage with the following summation of the case posture should the Court adopt the above recommendations. First, the case would be severed, leaving the claims against Defendant Fronabarger to proceed in a separate suit. Second, Defendants Bradberry and Butler would be dismissed entirely pursuant to *Younger*, as Plaintiff requested no form of relief from either of them. Third, Plaintiff's request for injunctive relief from the State of Tennessee would be dismissed pursuant to *Younger*. Finally, the claims against the State of Tennessee giving rise to a request for monetary damages would be stayed pending the resolution of the criminal state court proceedings. In short, all that would remain is one claim for salvage compensation against Defendant Fronabarger and the alleged § 1983 claim against the State of Tennessee for monetary damages only.

Respectfully submitted, this the 28th day of November, 2023.

**s/Jon A. York**
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATION MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT AND RECOMMENDATION. 28 U.S.C. § 636(b)(1). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**